DELBELLO DONNELLAN
WEINGARTEN WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:                                                                                  Chapter 11
                                                                                              Case No. 18-22145 (rdd)
CAROLEI REALTY L.L.C.,

                Debtor.
-----------------------------------------------------------------X

## DECLARATION OF JOHN CIARDULLO PURSUANT TO LOCAL RULE 1007-2

      JOHN CIARDULLO, being duly sworn, deposes and says:

1.   I am a Managing Member of Carolei Realty L.L.C. (the "Debtor"). I submit this affidavit pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

### Background

2.   In 1956, I arrived in America from my hometown, Carolei, in the Calbria region of southern Italy. Growing up in Italy, my parents sent me to train as a barber. So, soon after arriving in this great country I opened a hair salon with my brothers and a few friends from Carolei.

3.   In 1969, the hair salon's landlord experienced financial difficulties and was facing foreclosure. My brothers and friends got together, and on January 23, 1970, we bought from the foreclosure referee the building located at 800-810 Allerton Avenue and 2561–2575 Boston Post Road, Bronx, NY (the "Property").

4.   For decades our hair salon operated and thrived at the Property. Fifty years later, a

cousin still runs a hair salon there, Luigi of Italy, Inc. In addition to the hair salon, the building is occupied by two long term tenants (dry cleaner, chiropractor), a prime tenant (Mavis Tire Supply) and three other good tenants (liquor store, car wash, audio installer).

5. We paid off the mortgage on the Property long ago. The majority of utilities are paid directly by the tenants. The Property has supported my entire family and helped put our children through college, and one through law school. My brothers, friends and I are very proud of what we built. After many years of hard work, the Property now serves as our retirement.

### The Dispute with New York State

6. At the time we purchased the Property in 1970, it was occupied by an Exxon gas station and auto repair shop, as well as several other tenants. Neither Carolei, any family member of a Carolei member, nor any entity directly or indirectly controlled or owned by Carolei or its members ever owned or operated any underground storage tank or gasoline dealership at the Property.

7. In the 1990's we received a notice from the New York State Department of Environmental Conservation ("NYSDEC") concerning five underground tanks. It was unclear when those particular tanks were installed, but NYSDEC has advised us that tanks were in that location going back as far as 1929.

8. Exxon had ceased operations at the Property well before the 1990's, so we spent the necessary, significant funds to remove the tanks and remediate. NYSDEC inspected the job and closed the matter.

9. Almost two decades later, in 2015, NYSDEC re-opened the matter alleging further contamination and demanding remediation. We hired an environmental engineer who wrote a very detailed report. In layman's terms, the report shows it is scientifically impossible for the alleged contamination to have come from the former Exxon station or the underground tanks because the

chemical make-up of the contamination is wholly inconsistent with a recent spill, and the regional geology indicates that the contamination is migrating from offsite.  Based on the professional report we believe the contamination originated from another gas station in the area, perhaps the one that operates directly across the street.

10.    Ignoring our report, NYSDEC proceeded with an administrative process called a Motion for Order Without Hearing in Lieu of Complaint.  Again ignoring Debtor's report and all reasonable science, an order was issued on September 13, 2017, requiring the Debtor to pay a penalty in the amount of $83,750.  More onerous, however, was the portion of the order requiring further subsurface investigation and remediation in and around the Property (extending horizontally offsite and vertically below the Property in as of yet unknown distances), which could cost hundreds of thousands, if not millions, of dollars.  This expense would decimate the Debtor's financial stability and my partners and I would lose our source of retirement.

11.    This entire process has cost the Debtor an enormous amount of time and money.  The Debtor's financial difficulties and uncertain future are directly related to the NYSDEC findings, which the Debtor believes are inaccurate.

12.    Accordingly, the Debtor desires to utilize the bankruptcy process in order to reach a resolution with NYSDEC or alternatively to assert its rights against the actual wrongdoers.

13.    The Debtor believes that with the help of counsel it will be able to restructure its affairs, adjudicate the disputed claims, and propose a plan of reorganization that is in the best interests of its creditors and affords them the greatest recovery possible.

14.    The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as debtor-in-possession under Chapter 11 until confirmation of a reorganization plan.

## INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

15. In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

16. The Debtor owns and operates nonresidential real property located at 800-810 Allerton Avenue and 2561–2575 Boston Post Road, Bronx, NY. The circumstances leading to the instant case are set forth above.

**Local Rule 1007-2(a)(2)**

17. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**Local Rule 1007-2(a)(3)**

18. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

19. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) are (i) NYS Department of Environmental Control, 47-40 21st St., Long Island City, NY 11101; and (ii) Aqua Audit, P.O. Box 242, Cedar Grove, NJ 07009.

**Local Rule 1007-2(a)(5)**

20. The Debtor does not have any secured creditors.

**Local Rule 1007-2(a)(6)**

21. A balance sheet will be filed separately.

**Local Rule 1007-2(a)(7)**

22. There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

23. None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

24. The Debtor's administrative offices, registered address for service of process, corporate books and records, and bank accounts are all located in Westchester County at 156 Valentine Street, Yonkers, NY. The Debtor owns real property located at 800-810 Allerton Avenue and 2561–2575 Boston Post Road, Bronx, NY.

**Local Rule 1007-2(a)(10)**

25. The Debtor's accountant and associated records are located in Armonk, NY. All other of the Debtor's books and records are located in Yonkers, NY.

**Local Rule 1007-2(a)(11)**

26. The following legal actions are pending against the Debtor:

*In the Matter of the Alleged Violatins of Article 17 of the New York State Environmental Conservation Law (ECL), Article 12 of the New York State Navigation Law, and Titles 6 and 17 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYSCC), -by- Carolei Realty L.L.C.*

State of New York, Department of Environmental Conservation
DEC Case Nos. R2-20150202-52 and R2-20150409-231

**Local Rule 1007-2(a)(12)**

27. The Debtor's senior management includes John Ciardullo and Alfonso Ciardullo,

Managing Members.

 **Local Rule 1007-2(b)(1) and (2)**

28. The Debtor does not have employees.

29. The Debtor's Managing Members and Members do not take any salary, but do reimburse themselves for out of pocket costs of collecting the rents and managing the Property.

**Local Rule 1007-2(b)(3)**

30. The Debtor estimates that it will operate at a profit in the 30-day period following the filing of the chapter 11 petition.

## **CONCLUSION**

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: White Plains, New York
        January 9, 2018

*/s/ John Ciardullo*
By:_____
John Ciardullo, Managing Member

EXHIBIT A

30 DAY BUDGET

**Income:**

Monthly Income:           $31,200

**Expenses:**

Real Estate Taxes:        $66,000 per year / $5,500 average monthly
Water Charges:            $1,100